```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 6/24/2024
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>-against-<br><br>JULIO OZUNA,<br><br>Defendant. | 20-cr-00213 (MKV)<br><br>**ORDER DENYING<br>DEFENDANT'S MOTION<br>FOR A SENTENCE REDUCTION<br>PURSUANT TO 18 U.S.C.<br>§ 3582(c)(1)(A)(i)** |

MARY KAY VYSKOCIL, United States District Judge:

On November 1, 2021, the Court sentenced Defendant Julio Ozuna to a term of 200 months of imprisonment for his conviction, following a guilty plea, for attempted Hobbs Act robbery causing death, in violation of Title 18, United States Code, Sections 1951 and 2. [ECF No. 221]. Defendant, proceeding *pro se*, has filed a motion requesting a sentence reduction pursuant to both (1) Amendment 821 to the Sentencing Guidelines Amendments, and (2) 18 U.S.C. § 3582(c)(2) (Compassionate Release). For the following reasons, Defendant's motion is DENIED.

## BACKGROUND

Defendant was a member of a drug-trafficking organization that sold drugs and committed other acts of violence in the vicinity of Watson Avenue in the Bronx. [ECF No. 191, Presentence Report] ("PSR") ¶ 24. Defendant and other members of the organization worked together to sell large quantities of crack cocaine, controlling their drug territory using firearms, violence, and threats of violence to defend their turf against rivals. PSR ¶ 21. Law enforcement conducted approximately eleven controlled purchases of cocaine and crack cocaine from Defendant, including several in which he was present with or working with other members of the organization. PSR ¶ 24. In addition to Defendant's participation in the drug-trafficking organization, his conviction also stems from his participation in the attempted robbery that led to the death of Mr. Christopher Pierce, and his participation in other acts of violence. PSR ¶¶ 25–27.

1

The murder of Mr. Pierce resulted from a botched plot between members of the drug-trafficking organization, including Defendant, to rob a marijuana dealer ("Victim-1"), who was Mr. Pierce's friend. PSR ¶ 25. They planned to rob Victim-1 by soliciting a pretextual marijuana transaction before robbing him. PSR ¶ 25. The night of the robbery, Defendant, along with other members of the organization, traveled to the neighborhood where Victim-1 lived. PSR ¶ 26. At least one of the group members was carrying a firearm. PSR ¶ 26. Before calling Victim-1 to initiate the pretextual transaction, one of the members instructed the other three men to "make sure there was ammunition in the firearm." PSR ¶ 26. The group then called Victim-1 several times to ask for marijuana, and Victim-1 agreed to sell. PSR ¶ 26. Mr. Pierce accompanied Victim-1 to the agreed-upon meeting spot, where Victim-1 subsequently sold a dime bag of marijuana to each of two members of the group. PSR ¶ 26. During this transaction, a third member, who held a firearm, and Defendant, who was serving as a lookout, were standing only a short distance away. PSR ¶ 26. After the drug transaction, Victim-1 and Mr. Pierce left. PSR ¶ 26. As they walked, they were followed by three members of the group, while Defendant remained behind. PSR ¶ 26. After Mr. Pierce turned the corner a block away from the transaction, one of the members shot at Mr. Pierce, striking him once through the shoulder and killing him. PSR ¶ 26. All members of the group ran, and no robbery took place. PSR ¶ 26.

A mere two months later, in November 2018, Defendant and other members of the organization were arrested in a building within the organization's drug territory, each in possession of distribution quantities of crack cocaine. PSR ¶ 24. During the course of this offense, Defendant also possessed and brandished a firearm. PSR ¶ 24.

Just over a year later, in January 2020, Defendant worked in concert with two other individuals to rob another person ("Victim-2") at gunpoint. PSR ¶ 27. This time, Defendant

personally held the firearm. PSR ¶ 27. Victim-2 had previously listed a pair of designer jeans for sale for $600 on a social media phone app that allows users to post items for sale. Victim-2 was contacted by a user on the app, who expressed interest in purchasing the jeans. PSR ¶ 27. When Victim-2 arrived at the meeting location, however, he was ambushed by Defendant and two other men. PSR ¶ 27. During the robbery, Defendant brandished a small black firearm, and then the men knocked Victim-2 to the ground. PSR ¶ 27. Defendant and the other men took the jeans Victim-2 was selling, as well as Victim-2's phone and jacket. PSR ¶ 27.

On March 24, 2020, the Government unsealed Superseding Indictment S1 20 Cr. 213 (MKV) (the "Indictment"), charging Defendant and six other defendants in eight counts, seven of which charged Defendant in connection with the foregoing conduct. [ECF No. 23]. On June 2, 2021, Defendant pled guilty pursuant to a plea agreement to Count Two of the Superseding Indictment charging him with attempted Hobbs Act Robbery causing death. [ECF No. 165]. Pursuant to the plea agreement, the parties stipulated that the United States Sentencing Guidelines ("Guidelines") applicable to murder applied, as the attempted robbery resulted in the death of Mr. Pierce. [ECF No. 165]. Accordingly, the parties' stipulated Guidelines range was 240 months of imprisonment based on an offense level of 40, a criminal history category of I, and a statutory maximum sentence of twenty years. The Court's independent Guidelines calculation was in accord with that set forth in the PSR. On November 1, 2021, the Court sentenced Defendant to a below Guidelines term of 200 months of imprisonment. [ECF No. 229].

On May 6, 2024, Defendant filed a *pro se* motion requesting a sentence reduction pursuant to (1) Amendment 821 to the Sentencing Guidelines Amendments, and (2) 18 U.S.C. § 3582(c)(2) (Compassionate Release) [ECF No. 298] ("Def. Motion"). The Government opposed the motion in its entirety. [ECF No. 305] ("Gov. Opp.").

3

**DISCUSSION**

I. **Motion for Sentence Reduction Pursuant to
18 U.S.C. § 3582(c)(1)(A) (Compassionate Release)**

Section 3582(c)(1)(A) authorizes a court to reduce a previously imposed term of imprisonment upon a finding that "extraordinary and compelling reasons warrant such a reduction." 18 U.S.C. § 3582(c)(1)(A)(i); *see also United States v. Keitt*, 21 F.4th 67, 71 (2d Cir. 2021). A court deciding a compassionate release motion can consider "the full slate of extraordinary and compelling reasons that an imprisoned person might bring before [it]." *Keitt*, 21 F.4th at 71 (quoting *United States v. Brooker*, 976 F.3d 228, 237 (2d Cir. 2020)). "But there are [certain] requirements that must be satisfied before a court can grant such relief." *Id*.

   A. *Exhaustion of Administrative Remedies*

First, before a district court can reach the merits of a motion made pursuant to 18 U.S.C. § 3582(c)(1)(A)(i), absent waiver or forfeiture by the Government, the inmate must exhaust administrative remedies by requesting such relief from prison authorities. Specifically, an inmate may ask the sentencing court to consider reducing a sentence only "*after* the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A) (emphasis added); *see also United States v. Saladino*, 7 F.4th 120, 124 (2d Cir. 2021); *Keitt*, 21 F.4th at 71.

Here, Defendant submitted a request for compassionate release to the Warden of the institution on March 23, 2024. Def. Motion at 3. As of the filing of his Motion on May 6, 2024, Defendant had still not received a response on his request. Def. Motion at 3. As such, more than 30 days had lapsed after Defendant's request, and the Government does not challenge that Defendant has properly exhausted his administrative remedies.

    B. *Extraordinary and Compelling*
       *Circumstances in Light of 3553(a) Factors*

Second, a court must "consider[ ] the factors set forth in [18 U.S.C. §] 3553(a) to the extent that they are applicable." 18 U.S.C. § 3582(c)(1)(A); *Keitt*, 21 F.4th at 71. Section 3553(a), in turn, lists numerous factors a court must review when imposing a sentence. These include, "the nature and circumstances of the offense and the history and characteristics of the defendant"; "the need for the sentence imposed . . . to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense"; "the need for the sentence imposed . . . to provide the defendant with . . . correctional treatment in the most effective manner"; and "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a). "Third, the inmate must demonstrate that his proffered circumstances are indeed 'extraordinary and compelling' such that, in light of these § 3553(a) factors, a sentence reduction is justified under § 3582(c)(1)(A) and would not simply constitute second-guessing of the sentence previously imposed." *Keitt*, 21 F.4th at 71.

Because this Court sentenced Defendant, the Court is intimately familiar with how these factors apply to his circumstances. To begin, as the Court noted at sentencing, Defendant's offenses were serious and dangerous, one of which resulted in the tragic death of a young man. Moreover, even after committing an offense that resulted in the death of another human being, Defendant continued to participate in the drug trafficking of serious amounts of drugs and committed a second robbery in which Defendant personally used and brandished a firearm at a victim. The Court noted that Defendant had a very harsh upbringing while he was in the Dominican Republic, growing up extremely poor and witnessing a great deal of violence. The Court also took into account Defendant's young age at the time of the offense that led to the death of Mr. Pierce as well as his self-disclosed learning disabilities, substance abuse, and mental health

5

issues. Relatedly, the Court emphasized the need to provide Defendant with needed educational and vocational training, medical care, and other correctional treatment. Ultimately, the Court's 200-month sentence, which was significantly *below* the Guidelines range and *below* what was recommended by Probation, reflected the Court's careful consideration and balancing of each of the 3553(a) factors.

In his Motion, Defendant argues that his rehabilitation and conduct while incarcerated, and his youth at the time of the offense were not properly or fully considered at his sentencing. However, the record in this case—particularly the transcript of Defendant's sentencing hearing [ECF No. 229] ("Sentencing Tr.")—demonstrate that the mitigating factors Defendant now raises in his Motion as reasons warranting a sentence reduction were, in fact, factored into Defendant's 200-month sentence.

At sentencing, with respect to Defendant's rehabilitation and conduct while incarcerated, the Court expressly commented that it was "struck by the strides that [Defendant] ha[d] made since he was arrested." Sentencing Tr. at 27:17-18. The Court further noted that Defendant's "work under what I recognize were extremely harsh and difficult conditions, both before Covid and after Covid impacted the prisons, is extraordinary and something most of us can't understand." Sentencing Tr. at 27:19-22. The Court then stated that it "appreciate[d] even more the efforts [Defendant] made in those circumstances. To try to get treatment, to turn to [his] faith and rely on that, to try to rectify things, the counseling that [he had] gotten, [his] willingness to volunteer for jobs and the recognition of [his] trustworthiness in the setting you found yourself." Sentencing Tr. at 27:22-28:2. The Court concluded that his rehabilitative efforts gave the Court "hope for [Defendant] going forward." Sentencing Tr. at 28:4-5. In short, the record clearly shows that the

6

Court very carefully considered Defendant's rehabilitation and conduct while incarcerated.[1]

Defendant also argues that, at his sentencing, "the Court did not look at his age at the time of the offense." Def. Motion at 13. Specifically, Defendant argues that his "youth was not considered in conjunction with culpability as an equation." Def. Motion at 13. Again, the record belies this argument entirely. The Court explicitly recognized that Defendant "was not a leader in any respect in the commission of the robbery that led to the death of Mr. Pierce. He wasn't present on the scene at the time of the robbery. He was the lookout, making him, in the Court's mind, the least culpable of the three involved individuals who are still alive." Sentencing Tr. at 24:24-25:1-4. The Court continued that it was "mindful of how young [Defendant] was at the time of the offense that led to the death of Mr. Pierce. I'm mindful of how young he is right now. He, frankly, has his whole life ahead of him still. And the statutory maximum that he faces is the equivalent of his age, as I understand it, which is just daunting." Sentencing Tr. at 26:3-8.

At bottom, other than "changes in law"—*i.e.*, amendments to the Sentencing Guidelines, which the Court addresses separately below—Defendant has simply failed to identify any new factors that the Court has not already considered, let alone any "extraordinary and compelling reason" justifying a reduction in his sentence. Accordingly, any sentence reduction pursuant to Defendant's arguments would "simply constitute second-guessing of the sentence previously imposed," *Keitt*, 21 F.4th at 71, which is not a proper ground for reduction.

## II. Sentence Reduction Pursuant to 18 U.S.C. § 3582(c)(2) (821 Amendment)

Defendant also seeks a sentence reduction through the retroactive application of United States Sentencing Guidelines Amendment 821, which took effect on November 1, 2023. In its

---

[1] In his Motion, Defendant points to no new, post-sentencing rehabilitative efforts or conduct while incarcerated for the Court to consider. Thus, the Court only considers the rehabilitative efforts of which it is aware—all of which were considered by the Court at Defendant's sentencing.

7

Amendment 821, the Sentencing Commission amended the United States Sentencing Guidelines Manual in two respects. Part A amends Guidelines § 4A1.1, by reducing from two (2) points to one (1) point the upward adjustment for offenders who committed the instant offense while under any criminal sentence, and by limiting this adjustment to defendants who received seven (7) or more criminal history points. Part B, the part invoked by Defendant here, amends Guidelines § 4C1.1, by providing a 2-level offense level reduction for offenders with zero (0) criminal history points who meet specified eligibility criteria.[2]

Section 3582(c)(2), which governs Defendant's motion, establishes a two-step inquiry. A court must first determine that a reduction is consistent with Section 1B1.10 of the Sentencing Guidelines before it may consider whether the authorized reduction is warranted, either in whole or in part, according to the factors set forth in § 3553(a). *Dillon v. United States*, 560 U.S. 817, 826 (2010). Under Application Note 1(A) to Section 1B1.10: "Eligibility for consideration under 18 U.S.C. § 3582(c)(2) is triggered only by an amendment listed in subsection (d) that *lowers the applicable guideline range* (*i.e.*, the guideline range that corresponds to the offense level and criminal history category determined pursuant to §1B1.1(a), which is determined before consideration of any departure provision in the Guidelines Manual or any variance)." (emphasis added).

Here, Defendant is ineligible for a reduction under Amendment 821, Part B, Subpart I because the offense for which Defendant was convicted resulted in death, *see* U.S.S.G. § 4C1.1(a)(4), *and* because Defendant already received a sentence lower than what the potential amended sentence range would be if the Amendment were applied, *see* U.S.S.G. § 1B1.10(b)(2)(a). As previously discussed, Defendant's conviction resulted from his participation in the attempted

---

[2] The Sentencing Commission made these amendments retroactive, effective November 1, 2023. Defendants whose requests are granted could not have been released from prison before February 1, 2024.

robbery of Victim-1, which resulted in the murder of Mr. Pierce. Thus, because Defendant's offense conduct resulted in death, he does not qualify for relief under Amendment 821. *See* U.S.S.G. § 4C1.1(a)(4). Furthermore, even if Defendant did meet the criteria in Amendment 821, Part B, Subpart 1, he nevertheless would not qualify for a sentence reduction because his sentence is below the minimum of what would be the amended Guidelines range. At sentencing, Defendant's total offense level was 40. Therefore, if he received the two-level reduction in offense level because he had zero criminal history points, his offense level would have been 38. A Total Offense Level of 38 and a Criminal History Category of I would have yielded a Guidelines range of 235-293 months' imprisonment. Because Defendant was sentenced to 200 months' imprisonment, which is lower than the 235 months at the end of the reduced Guidelines range, he is not eligible for a reduction. *See* U.S.S.G. § 1B1.10(b)(2)(a).

## CONCLUSION

For the foregoing reasons, Defendant's motion requesting a sentence reduction is DENIED. The Clerk of Court is respectfully requested to terminate docket entry number 298.

**SO ORDERED.**

*[Signature: Mary Kay Vyskocil]*

**Date: June 24, 2024**
**New York, NY**

**MARY KAY VYSKOCIL**
**United States District Judge**